## 10751

ABERNATHY *ET AL.* v. WOLFE, ATTY. GEN., *ET AL*

(109 S. E. 275)

ELECTIONS—PERSONS WHO DID NOT PAY THEIR TAXES WHEN DUE AND PAYABLE HELD NOT ENTITLED TO VOTE AT SPECIAL ELECTION.—Persons who failed to pay their property and poll taxes on or before the 31st day of December, 1920, when they were due and payable, were not entitled to vote at a special election on the question of annexing a portion of one county to another county, held on January 11, 1921, though paying before the election, and, the number so voting being enough to have changed the result, the election was void, Const. Art. 2, § 4, prescribing as a prerequisite of the right to vote the payment six months before any election of any poll tax due and payable, and requiring every voter to prove payment of all taxes assessed against him and collectable during the previous year.

Before MOORE, J., Chester, March, 1921.    Affirmed.

Certiorari by W. L. Abernathy and others, directed to Samuel Wolfe, Attorney General, and others, as State Board of Canvassers, to review a decision in the matter of an election held in Chester County upon the question of annexing a portion of Chester County to York County. Judgment for defendants and plaintiffs appeal.    Affirmed.

The decree of Judge Moore reads as follows:

This matter came before me on the 15th day of March, 1921, and was heard in response to a writ of certiorari issued by me on the 3rd day of March, 1921, directed to the respondents above named, who constitute the State Board of Canvassers, to review the decision of said board in the matter of an election held in Chester County, S. C., on the 11th day of January, 1921, upon the question of annexing a portion of Chester County to York County.

It appears from the record that on the 20th day of December, 1920, the Governor ordered said election to be held at the time above stated, and in obedience to said order said election was held at said time.    While the order of

the Governor was dated the 20th day of December, 1920, it was not received by the commissioners of election of Chester County until the 30th day of December, 1920, and the first notice of said election was not published until the 31st day of December, 1920, being only eleven days before the date fixed for the holding of said election.

On the 18th day of January, 1921, the board of canvassers of Chester County met and organized for the purpose of canvassing the returns of managers and counting the votes and declaring the results of said election. At that time Messrs. D. Ferguson and others, who were opposed to the annexation of said territory to York County, duly filed their notice of grounds of protest and contest of said election. The returns of the managers show that 212 votes were cast at said election, of which 148 votes were in favor of annexation and 64 votes against annexation. It appeared from testimony taken before said board of canvassers that of the total 212 votes cast at said election 97 of the voters so voting had failed to pay their property and poll taxes assessed against them and payable on or before the 31st day of December, 1920. It was claimed by the contestants that the 97 votes mentioned were illegal, by reason of the nonpayment of said taxes on or before the 31st day of December, 1920, although many of said voters paid their taxes after said date and before said election. The County Board of Canvassers sustaining all the grounds of protest and contest, held said election to be null and void.

From the judgment and decision of the County Board of Canvassers, the proponents of annexation served notice of appeal to the State Board of Canvassers upon several grounds, which are not necessary to be stated here. On being heard by the State Board of Canvassers, that board affirmed the judgment of the County Board of Canvassers of Chester County and held said election to be void, upon the ground that the votes of the 97 voters were illegal be-

cause they had not paid their taxes prior to the 31st day of December, 1920.

While the petitioners above named alleged error in the decision of the said board of canvassers upon several grounds, the principal ground argued before me involved the illegality of the 97 votes above mentioned, and I do not feel it necessary to base my decision herein upon any other than the principal ground that was argued before me, namely, the illegality of said 97 votes.

The evidence is undisputed that 97 of the voters in the election in question had failed to pay their poll and property taxes prior to the 31st day of December, 1920. After a careful consideration of the matter, it appears to me that the petitioners herein are concluded by the decision of the Supreme Court in *Clark v. McCown,* 107 S. C., 209. That case involved the validity of an election held on the question of annexing a part of Berkeley County to the County of Charleston, and the very point in issue here was raised in that case, because it was alleged that numerous persons (not named) were permitted to vote, whose votes were not legal because they had not paid their poll tax six months before the election." The election was held on May 9, 1916. In disposing of this question, the Court, at page 215, says:

"Subdivision (a) of Section 4, Art. 2, of the Constitution prescribes as one of the prerequisites of the right to vote 'the payment six months before any election of any poll tax then due and payable,' and Subdivision (e) of the same section requires of every person offering to vote 'proof of the payment of all taxes, including poll tax, assessed against him and collectible during the previous year.' By the plain terms of the Constitution these provisions apply to all persons offering to vote at any election. Therefore it makes no difference whether it is a general or a special election. The purpose of the lawmakers was to

stimulate due performance by the citizens of their duty to support the government, and penalize delinquency in that regard, and forestall the evil practice sometimes resorted to by those interested in elections of indirectly purchasing votes by paying the taxes of delinquents immediately before an election to qualify them to vote therein. It was not intended to penalize by disqualifying one who had not become delinquent in the matter of paying his taxes. One who merely takes advantage of a privilege extended to him by the law is not in default. Therefore, although the taxes for the year 1915 were payable at any time between October 15th and December 31st, without penalty, all electors who paid their taxes on or before December 31st were not in default, and were entitled to vote in any election held after that date, if otherwise qualified. But those who failed to pay their taxes on or before December 31st were disqualified from voting in any election held within six months thereafter. The undisputed evidence shows that some ten or twelve persons were permitted to vote in this election whose poll tax was paid after December 31, 1915. These votes were illegal; and, as there were enough of them to have changed the result, and as the poll could not have been purged of them because it did not appear how they voted, the election was thereby vitiated."

The same question appears to have been raised in the case of *Wright v. State Board of Canvassers*, 76 S. C. 574, and it appears in the opinion of the Court, by inference at least, that it is necessary for a prospective voter at an election to offer proof of the payment of his taxes during the year previous to said election. On page 592 of the Report, in affirming the judgment of the Circuit Judge, Chief Justice Pope stated:

"We see no fault in the conclusion of the Circuit Judge holding it mandatory that each voter should, as a prerequisite to voting, produce his registration certificate. Nor

is there any fault in the view of the Circuit Judge in hold-
ing that it was mandatory that every voter should, as a
prerequisite to voting, offer proof of his having paid his
taxes during the previous year.   This was not done in this
case at the precincts at Laurens and Clinton.   No certifi-
cate or receipt of the officer authorized to collect such
taxes was produced.   The only matter referred to is the
oath of the voter that he was qualified to vote.   This will
not answer the demands of the Constitution and statute.
And inasmuch as there were classed as legal voters hun-
dreds who did not produce certificates of registration and
proof of payment of taxes of previous year, the election
is void."

This question, therefore, as it appears to me, having
been expressly decided by our Supreme Court, I do not
think the decision was obiter dictum, or that it would be
proper for me to undertake to reconsider the matter now,
or to overrule the decision of that Court, especially when
such question involves a construction of the Constitution
of the State.   It is therefore ordered and adjudged that
the decision of the State Board of Canvassers, holding said
election to be void, be, and the same is hereby, affirmed.

*Messrs. Wilson & Wilson* and *R. H. Welch,* for appel-
lants, cite:  *Details of election in the discretion of the Gov-
ernor:*  73 S. C., 412; Secs. 646, 647, 1 Civ. Code 1912.
*Places of voting:*  Sec. 646; 102 S. C., 269.  *Irregularities
of election officials do not deprive qualified voters of their
right to vote:*  76 S. C., 587; 78 S. C., 467; 97 S. C., 9;
1 Civ. Code 1912, Sec. 235.   *Prerequisites to voting:*
Art. II, Sec. 4 (a), Const. 1895; 76 S. C., 590; Secs. 200,
239, 1 Civ. Code 1912; 97 S. C., 10.  *Extension in time
for payment of taxes alters case:* 107 S. C., 209.

*Messrs. R. L. Douglas* and *J. E. McDonald,* for respond-
ents, cite:  *Governor cannot order election within less
than thirty days:*  1 Civ. Code 1912, Sec. 640.  *Polling*

*places*: 102 S. C., 256; 1 Civ. Code 1912, Sec. 646; 31 Stats. 729-30.    *Prerequisites for obtaining registration certificates and voting*:    Const. 1895, Art. II, Sec. 4; Id. Subd. e; 1 Civ. Code 1912, Sec. 200; 84 S. C., 48; 86 S. C., 451; 76 S. C., 574.    *Taxes due*:    1 Civ. Code 1912, Sec. 445. *Receipts .must be dated between Oct. 15th and Dec. 31st*: 107 S. C., 209; 76 S. C., 574.    *Where it appears that a free and fair expression of the popular will has not been had election will be set aside*:    86 S. C., 451; 102 S. C., 256.

November 9, 1921.

The opinion of the Court was delivered by MR. JUSTICE WATTS.

For the reasons assigned by his Honor, Judge Moore, it is the judgment of this Court that the judgment of the Circuit Court be affirmed.